Filed 5/5/14  P. v. Cuevas CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GUSTAVO CUEVAS,<br><br>    Defendant and Appellant. | B243117<br><br>(Los Angeles County<br>Super. Ct. No. NA091065) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Gustavo Cuevas appeals his convictions and sentence on two counts of failing to register as a sex offender.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      January 2010 Release from Incarceration

On April 5, 2002, Cuevas was convicted of a felony that required him to register as a sex offender pursuant to Penal Code[1] sections 290 through 290.023.  He was released from incarceration on January 28, 2010.

On February 3, 2010, Cuevas reported to Los Angeles Police Department officer Dawna Killingsworth for sex offender registration.  Together they reviewed a form entitled, "Notice of Sex Offender Registration Requirement."  She allowed Cuevas time to read the form and to ask questions, and she reviewed the requirements of the form. Cuevas signed the document and initialed each line on a list of requirements.  One of the listed requirements was the requirement to re-register within five days after release from an incarceration lasting more than 30 days.  Cuevas initialed this requirement, and agreed to follow the terms.

Next, Killingsworth and Cuevas reviewed a sex registration update form.  Cuevas provided information about where he would be staying, and that information was included on the form.  Killingsworth gave Cuevas time to read the form and to ask questions.  He appeared to understand what he was reading, agreed to follow the terms, and signed and initialed the form.  Killingsworth gave Cuevas copies of the registration documents.

### II.      October 2010 Release from Incarceration

Cuevas was subsequently incarcerated from September 17, 2010, through October 30, 2010.  He was released on October 30, 2010.

On November 2, 2010, Cuevas reported to his parole officer, Monica Abundis, in Huntington Park.  She reviewed a form with him that contained the conditions of his

---

[1]      Unless otherwise indicated, all further statutory references are to the Penal Code.

parole, allowing him time to read it. Abundis asked him to initial certain lines of the document and to sign it if he understood and agreed with its terms. Cuevas signed the document.

The parole conditions form specifically stated that registration was required under section 290. Abundis went over that registration requirement with Cuevas, and she advised him that he needed to register as a sex offender as soon as possible. Cuevas said he was homeless and a transient. Abundis advised him to register as a transient as soon as possible, and that he had only five business days to register. Cuevas indicated that he understood the requirement and that he would fulfill it. Among other conditions to which Cuevas agreed were requirements that he keep his updated sex offender registration verification with him at all times and present it during contact with law enforcement, and that he remain in California unless given permission by his parole officer to leave.

Abundis placed a global positioning system (GPS) device on Cuevas's ankle for parole supervision and instructed Cuevas not to take off the device. The device monitored his location and also sent out an alert to the parole agent if it was removed or tampered with. Cuevas was wearing the GPS device when he left Abundis's office at approximately 12:05 p.m.

Later that day, the GPS device transmitted an alert indicating that Cuevas had removed the device. At approximately 1:25 p.m., a woman identifying herself as Cuevas's girlfriend returned the cut-off GPS device to Abundis.

Cuevas failed to re-register as a sex offender within five business days of his release from incarceration. His location was unknown to parole and law enforcement until he was taken into custody in Los Angeles County on December 29, 2010.

### III.    June 2011 Release from Incarceration

Cuevas was incarcerated from January 21, 2011, through June 7, 2011, and was released on June 7, 2011. On June 8, 2011, Cuevas reported to parole agent Melissa Cogill. She went over the conditions of parole with him again, and he initialed and signed a form reflecting these conditions. Cogill went over the requirement that he

3

register as a sex offender with Cuevas, as well as the residency restrictions that apply to him as a sex offender. Cuevas read and signed the specific sex offender addendum form that specified registration requirements and other conditions for sex offenders. Cuevas also read and signed a form entitled, "Notice of Sex Offender Registration Requirement." He confirmed that he understood what was required of him and affirmed that he would follow the rules.

Cogill asked Cuevas where he was going to live to ensure that his address was compliant with residency restrictions. Cuevas said he wanted to live with his girlfriend; he did not provide her address, but he implied that the residence was close to a park or a school. Cogill told him that if he could not provide her with a residence, he had to register as a transient. Cogill explained that if he were to register as a transient, he would register with the police department that covered the area, or the sheriff's department if he was within the county. Cuevas said he would be living in Los Angeles County. Cuevas agreed not to leave California without Cogill's permission, and he never asked for permission to leave the state.

Cogill fitted Cuevas with a GPS device, and it was intact when Cuevas left the office. Cogill received a tampering alert from the device on June 12, 2011. Cuevas was a parolee at large until July 18, 2011, when he turned himself in.

Cuevas was charged with two counts of failing to register as a sex offender upon release from incarceration (§ 290.015, subd. (a)), one based on the time period from November 8, 2010, and December 9, 2010, and the other based upon the time period from June 14, 2011, and July 18, 2011. It was alleged as to both counts that Cuevas had suffered prior convictions within the meaning of the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

Cuevas was convicted by the jury on both counts. The court found true the prior conviction allegations, denied Cuevas's motion to strike his two prior strikes, and imposed a sentence of 53 years to life.

4

## DISCUSSION

### I.     Sufficiency of the Evidence to Support Conviction

Cuevas argues on appeal that the evidence was insufficient to support his convictions for failing to register as a sex offender because the prosecution failed to prove beyond a reasonable doubt that Cuevas was living in California on the dates relevant to each charge. "In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

Section 290.015, subdivision (a) provides that a person subject to the sex offender registration requirement "shall register, or reregister if he or she has previously registered, upon release from incarceration, placement, commitment, or release upon probation." The individual "must register with the chief of police of the city in which he or she is residing, or with the sheriff of the county if he or she is residing in an unincorporated area or a city that has no police department. [Citation.] Registration must be made within five working days of 'coming into, or changing his or her residence within' any city, county, or city and county. [Citation.]" (*People v. Armas* (2011) 191 Cal. App.4th 1173, 1177.) Offenders without a residence are considered to be transients

5

within the meaning of the law. (*Ibid*.) Transients must reregister every 30 days; offenders with residences must reregister annually. (*Ibid*.)

Here, there was substantial evidence from which the jury reasonably could have concluded that Cuevas resided or was physically present as a transient in California during the relevant time periods. In the 2010 failure to register, Cuevas had told Abundis that he was a transient and that he was homeless. She explained how to register as a transient and the requirement to register within five days, and Cuevas agreed. Cuevas also agreed that he would stay in California unless he received permission from his parole agent to leave. Cuevas was taken into custody again two months later in Los Angeles County.

In the course of notifying Cuevas of his registration requirement in 2011, Cogill asked Cuevas where he planned to live. Cuevas indicated he would live with his girlfriend, whom Cogill believed to live in Torrance. It appeared, however, that she might reside too close to a park or school for Cuevas to live with her, so Cogill explained how to register as a transient. Cuevas agreed to register as a transient, and he told Cogill that he would be living in Los Angeles County. Cuevas also agreed to the parole condition requiring him to obtain permission before leaving the state, and he never sought permission to leave. There was no indication in Cuevas's law enforcement file of Cuevas being extradited to California at any point in 2010 or 2011.

In light of this evidence of Cuevas's regular presence in California, the absence of any extraditions, his multiple apprehensions in California, and his expressed intent to stay in Los Angeles County, the jury could reasonably conclude that Cuevas resided, or was physically present as a transient, in California without reregistering as a sex offender within five days of being released from incarceration.

Cuevas contends that *People v. Wallace* (2009) 176 Cal.App.4th 1088 mandates reversal here. In *Wallace*, a sex offender had complied with registration requirements for several years and had last registered in Contra Costa County in January 2006. (*Id*. at pp. 1093-1094.) In April 2007 his last known address was determined to be vacant. (*Id*. at p. 1094.) Wallace's conviction for failing to register within five working days of

6

changing his address or location was overturned because there was no evidence of his location in April 2007 and no evidence "sufficient to permit a reasonable inference that appellant remained in California during that time period." (*Id*. at p. 1103.) Moreover, the then-applicable jury instruction did not advise the jury that the defendant was required to reside within California at the time of the charged offense to convict. (*Id*. at p. 1104.) In contrast, here, the jury was properly instructed that the prosecution had to prove that "defendant resided in or was physically present as a transient in California" and that he "failed to register as a sex offender with the police chief of the city or the sheriff of the county in which he resided or was physically present as a transient within five days of release from incarceration" to be guilty of failing to register,[2] and there was evidence in the record, as discussed above, from which a reasonable jury could conclude that Cuevas had remained in California at all relevant times. *Wallace* does not require any other outcome here.

## II.     Alleged Instructional Error

As given, CALCRIM No. 1170 provides that the prosecution must prove four listed elements: (1) "The defendant was previously convicted of an offense for which the defendant is required to register"; (2) "The defendant resided in or was physically present as a transient in California"; (3) "The defendant actually knew he had a duty under Penal Code section 290 to register as a sex offender and that he had to register within five working days of release from incarceration"; and (4) "The defendant willfully failed to register as a sex offender with the police chief of the city or the sheriff of the county in which he resided or was physically present as a transient within five working days of release from incarceration." Counsel requested that the instruction be modified to mention in the fourth element that the defendant must at the time of the failure to register be living in California, and this request was denied.

---

[2]     We acknowledge that Cuevas separately challenges the adequacy of this jury instruction; we address this contention in Section II, *post*.

Cuevas contends that CALCRIM No. 1170 fails to communicate to the jury that the accused must have been residing or physically present as a transient in California at the time of the offense, and that it permits a jury to convict a defendant for failing to register as long as he had resided in or was physically present as a transient in California at any time. Cuevas offers no authority to support his reading of the statute, nor are we aware of any; moreover, we agree with the trial court that this construction of the instruction was "unreasonably strained" and "tortured." The second element of the offense is that the defendant "resided in or was physically present in California." (CALCRIM No. 1170.) While the second element does not specifically refer to the time when the accused must be resident or present in California, the timing is provided by the fourth element of the instruction: "The defendant willfully failed to register as a sex offender with the police chief of the city or the sheriff of the county in which he resided or was physically present as a transient within five working days of release from incarceration." (CALCRIM No. 1170.) The reference in the final element to the city and/or county in which the person was residing or physically present clearly calls back to the second element and the requirement that the city or county of residence/presence be in California. Reading the instruction as a whole, we do not believe that there is a reasonable likelihood that the jury understood the instruction as Cuevas posits (*People v. Kelly* (1992) 1 Cal.4th 495, 525-526), particularly in light of defense counsel's closing argument emphasizing that "element no. 4 is linked to element no. 2. The defendant had to have been residing or physically present in California while he willfully failed to register as a sex offender." We therefore find no error in refusing the requested modification.

### III. Denial of *Romero* Motion

Cuevas asserts that the trial court abused its discretion when it denied his motion to strike his prior convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 for the purposes of applying the Three Strikes Law. In deciding whether to strike a prior serious and/or violent felony conviction allegation or finding under the Three

8

Strikes Law, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) We review rulings on motions to strike prior convictions for an abuse of discretion. (*Id.* at p. 162.)

Cuevas argues that his prior strikes should have been stricken because the court considered the nature and number of his convictions without giving due consideration to the nature of his current offense and other individualized factors, specifically that his present offenses were nonviolent; registration offenses were routinely treated as second strike cases by the District Attorney; his most recent strike was more than ten years old; and he would have had a lengthy sentence of seven years, four months even if the strikes had been stricken. Had the court properly weighed the relevant considerations, he contends, the court would have found that he was outside the spirit of the Three Strikes Law.

We have reviewed the transcript of the hearing on the *Romero* motion and conclude that, contrary to Cuevas's contention, it is apparent that trial court discharged its duty to consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, Cuevas should have been deemed outside the scheme's spirit. (*Williams*, *supra*, 17 Cal.4th at p. 161.) The trial court discussed these considerations when ruling, noting that the present offenses were nonviolent and were not themselves strikes. The court noted that Cuevas's prior convictions were for very serious offenses: "The arson for which he was given probation, ultimately violated probation, got a prison commitment of three years. The other strikes are much more serious in nature[,] involving the lewd act for which he ultimately received eight years in prison, the child being under 14. The robbery of the female employee was particularly of a vicious nature. He received nine years on that concurrent with the lewd act matter. [¶] The defendant's

9

conduct during his life is what the prosecutor indicated, continuous criminal activity, on parole. He has removed bracelets to prevent his whereabouts being detected by the authorities. So his conduct on probation and parole has been poor. His conduct in the past has shown he's an extreme danger to the community and is not open to rehabilitation." The court acknowledged that Cuevas's present offenses were nonviolent "low-grade felon[ies]," but concluded that "the other circumstances indicate that he is the kind of person that the three-strike law was designed to deal with, and that is to prevent future harm to society." The court's comments demonstrate that it had considered the nature and circumstances of Cuevas's present felony and his prior serious and/or violent felony convictions, as well as the circumstances of his background, character, and prospects, and the court concluded that in light of his consistent serious criminal activity, his efforts to evade supervision on parole, and his resistance to rehabilitation, Cuevas could not be considered to be outside the scheme's spirit such that sentencing him as a third strike offender would be unjust. (*Ibid.*)

The court's determination was not an abuse of discretion. The record reveals no basis for concluding that Cuevas is outside the spirit of the Three Strikes Law. Cuevas has an extensive criminal record beginning with a conviction for grand theft person (former § 487, subd. (2), now § 487, subd. (c)) in February 1989, and a sentence of county jail plus three years of probation. Only months later, in May 1989, he was convicted of arson (§ 451, subd. (d)) and sentenced to county jail plus three months of probation. He violated that probation later the same year when he was convicted of possession of a controlled substance (Health & Saf., § 11350, subd. (a)), leading to a three-year state prison sentence. He was released on parole in April 1991, and in April 1993 he was convicted of burglary (§ 459) and sentenced to two years in state prison. In May 1994, Cuevas was released on parole. In August 1994, he violated his parole and was returned to prison. In August 1995, he was paroled again, but violated his parole in December 1995. On December 28, 1995, Cuevas was paroled, but six days later he was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) and sentenced to county jail and three years of probation. On August 2, 1996, he was convicted of corporal injury

10

to a spouse (§ 273.5) and sentenced to county jail.  He violated his parole multiple times between November 1996 and May 1998.

Cuevas was convicted of robbery (§ 211) on August 28, 2000, and was sentenced to nine years in prison.  He was convicted of a lewd and lascivious act on a child under the age of 14 years (§ 288, subd. (a)) in April 2002 and was sentenced to eight years in prison.  He was paroled on January 28, 2010, and that parole was revoked in April 2010.  He was again paroled on October 30, 2010, and he immediately committed one of the instant offenses by failing to register as a sex offender.  After he was again paroled in June 2011, he committed the second of the instant offenses.

Cuevas argues that his most recent strike was over ten years old, but the age of a strike is not a reason to strike it when a person has engaged in consistent criminal activity over the intervening years.  (*Williams*, *supra*, 17 Cal.4th at p. 163 [13 years elapsing between strike offense and present offense not significant given the failure to refrain from criminal activity in the interim]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 320-321 [remoteness of strike priors not significant in light of "unrelenting record of recidivism" and failure to lead a crime-free life in the interim].)  Although he argues that the present offenses are nonviolent, that fact does not remove him from the spirit of the Three Strikes Law, because the law intends to ensure longer prison sentences for defendants who commit felonies after having qualifying strikes.  (*Gaston*, at p. 321  ["While the crime is not as serious as many felonies—indeed it is not defined as a 'serious felony'—it is far from trivial"].)  He then asserts that third strike failure to register cases are routinely settled for 32 months or less and that they are treated as second strike cases, but his characterization of how cases are "routinely" handled, based on an assertion made by defense counsel at the *Romero* hearing, does not establish that he is outside the spirit of the Three Strikes Law or that handling the case differently was an abuse of discretion.  Finally, Cuevas's assertion that his non-strike sentence of seven years, four months would be lengthy, in the interests of society, and consistent with his right to a proportionate punishment does not demonstrate any abuse of discretion.  The trial court acted well within its discretion in determining that in light of Cuevas's present offenses

11

and criminal history, as well as his background, character, and prospects, he should not be deemed outside the spirit of the Three Strikes Law.

## DISPOSITION

The judgment is affirmed.


ZELON, J.

We concur:


WOODS, Acting P. J.


SEGAL, J.[*]

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution